Source Vagabond Systems v. Hydrapak Source Vagabond Systems v. Hydrapak, Inc. Thank you, Your Honor, and may it please the Court. In this case, there are two companies that compete for customers. One sold a product similar to another's patented product, and the other sued. The case was decided on cross motions for summary judgment with no significant discovery, and the decision was affirmed on appeal. There was a motion on appeal for sanctions. That motion was denied by this Court. So all that remains in the case is Rule 11 sanctions in the District Court, and the District Court gave four reasons for those sanctions. Claim construction, little infringement, claim vitiation, and pre-suit investigation. So if I may, I'd like to start with claim construction. In the claim construction context, the District Court said we violated all the relevant canons of claim construction, and that's not correct. We follow the relevant canons of claim construction, and in particular, we relied on the claim language itself in the context of the surrounding language of the claim. We relied on the specification both for the optimized sizes as well as for the purpose of the invention. And in our brief, we're not arguing that we were right on claim construction. Here today, the only question is whether our claim construction argument was correct. But isn't the problem that you filed a complaint seeking relief on a construction that's separate from what the record shows and what you argued during prosecution of the patent? Not at all, Your Honor. I think that the complaint was filed on the same theory of infringement as was presented in the District Court. The court, in fact, says that the flaw in our pre-suit investigation, which is a separate issue in the Second Circuit, but the flaw in our pre-suit investigation was that the record shows, in fact, that it's the same claim construction and the same little infringement arguments that the court rejected. So it's not that we changed between complaint and the actual arguments. It's that the actual arguments were found frivolous, and we're arguing now that they were not. I think the overall issue on claim construction is one the court has wrestled with many times, and that is whether you construe the claim by importing a limitation from the spec, which is barred, or you read the claim in light of the spec, which is allowed. I don't know what you're talking about. You say the claim says the slot being narrower than the diameter of the rod. The only way their accused product can possibly infringe is if I allow the slot to be wider than the diameter of the rod, not narrower. You're asking for the exact opposite, and you added this term during prosecution. So I think it's what Judge Raynor was alluding to quite clearly, which is this isn't a random term. You added it during prosecution to overcome prior art, and now the only possible— The difference is apparent to the naked eye. It isn't close. The accused product clearly does not have a slot that is narrower than the diameter of a rod. So I understood the district court's problem to be this claim construction isn't even plausibly reasonable. And so why—I guess what—I don't understand what your response to this is. So our response is, in fact, that it is plausibly reasonable, Your Honor. Again, you've got the right standard. It's not that we're correct. It's that it's reasonable. And I start with the claim itself, which is on the inside cover of the brief. The antecedent language to the language the court just recited is when the portion of the container is folded over the rod. So this sealer, this invention, only works in the context when you have the container folded over the rod. And because you're folding it over the rod before you engage the sealer, we argued below that the slot being narrower than the diameter of the rod really means narrower than the diameter of the rod. Plus the folded over portion, which is clearly in the claim articulated as a different element, right? There's the rod, and then there's the substantial overlap of the adjacent folded over portion, or whatever it is. I don't remember the exact language. But it's never—the rod is never, in this claim, used to imply both of those separate elements. Well, Your Honor, in addition to the antecedent basis and the consequent basis, which we talk about in our brief, the sealer being only slidingly mounted, it only makes sense when you're really comparing the slot to the rod and the container together. Because the purpose of the invention is to seal the leak in the container that would be present if the rod and container could come out of the sealer. Now, in addition to that argument, in the specification we talked about the optimized sizes of the rod and of the slot. And in the spec, the optimized sizes are about 3 millimeters for the rod and about 3 millimeters for the spec. In other words, the rod and the slot are both about 3 millimeters. The only way for them to be the same, about 3 millimeters being the same, is if this language, the slot being narrower than the diameter of the rod, allows for the rod to be folded over. And that language is in the spec column 7, at the bottom of column 7 on A-72. It's also at the top of column 10, the optimized sizes, at A-73. It's on the outside, not on the inside. It's got six catches, not one rod. How is the court not correct in finding that argument? In terms of literal infringement, we rely on the Textron case there. Because what we've really said is those catches are really dependent... You said you're a raised doctor. No, we're still on literal infringement, if I may, Your Honor. Those catches are really part of the container. And so when the proper comparison between the rod and the slot is the comparison between the rod with the container folded over it and the slot, then the catches, which are part of the container, can be included and therefore you can have literal infringement. And we think the Textron case shows that it's okay to have more than one catches. Are those catches a term in the claims? They're not a term in the claims, but they're only in the accused product. They are, however, attached to the container. Well, they're attached to the container, but are they part of the container? Well, it was not unreasonable to argue that they were in light of the Textron case. Now, in the Second Circuit, all reasonable doubt is resolved in our favor. And in the Second Circuit, one case is enough. So I just want to focus on that Textron case for a moment. In Textron, there was a strap that was residing in the claim, and the accused product didn't have a strap. Instead, the strap was for engaging another element and keeping it from sliding. In the accused product, there was no strap that would do that. There was only a rubber gasket, and there were two stops on opposite sides of that rubber gasket. And the two stops are what stopped the sliding of the engaged product. So the court said in Textron, and I mentioned it's a non-precedential case from this court, but it's still informative. The court said yes, the court below, the district court, said that's summary judgment, there's no literal infringement. This court reversed and said no, that will be allowed to go to the jury, because there's nothing in the spec that keeps the strap element from being met by the three elements that are in the accused product. So it actually wasn't a sanctions case, it was a summary judgment case. Summary judgment was reversed and went back to the district court for a jury trial. Now if I can move to the doctrine of equivalence, the court in the doctrine… You're arguing that we should look at the biggest portion of the list on the model that Judge Wallace was showing us, and then include the latches and that that's the relevant measurement. You're asking us to use that as a relevant measurement. Well, just to take a step back, Your Honor, I'm not asking you to reverse what this court did on appeal previously, which was decide the merits. I'm asking the court to consider the plausibility of the argument. In the district court opinion, you won't find the catches discussed in terms of literal infringement. That's what I'm getting at. I mean, it seems to me that the proposed construction that you had was seeking a specific definition or construction that related to the width of the rod and the fold alone. Well, I think if we look at the sanctions section of the opinion, there the court is very clearly saying… has very clearly said that we haven't… that we've abandoned or haven't put forth our literal infringement argument. So there's no addressing of this literal infringement argument there in the sanctions portion or in the prior portion. You won't find the catches being addressed in the sanctions portion of the case or in the literal infringement discussion in the merits portion of the order below. So what we're operating on is kind of a question of whether these catches should have at least been considered and then what the court should have done if it found that argument unreasonable. But the broader point is that in literal infringement, construing the arguments, resolving the doubts in favor of the signer, we have a non-frivolous argument on literal infringement. And if I may, I'd like to switch to the doctrine of equivalence, Your Honor, because there we have a very clear use of claim vitiation by the district court to sanction the source. And claim vitiation, claim vitiation doctrine such as is, is a question of law. What it tells you is that the jury couldn't find for the defendant or for the patentee, I'm sorry, because of claim vitiation. But it doesn't tell you, and none of the cases cited in the court's opinion for claim vitiation tell you, that requires a sanction on the party. It only goes to incorrect as a matter of law and it doesn't go the much further case of sanctionable under Rule 11, frivolous as a matter of law, just to say that. And here, simply being wrong is not enough. Simply being wrong as a matter of law is not enough. In fact, this opposites argument that we've been having is reflected in the Boda case, which came out the other way when a curved portion of the express surgical instrument, I believe it was a guide catheter, was met by the claim limitation for a straight portion. And even though those two were allegedly opposite, the court found that the jury's decision that the infringement under the doctrine of equivalence was legitimate. And we are devoted to the district court in light of these other cases. It's not addressed in the opinion below, but it's a case that supports our position on doctrine of equivalence. And in particular, it shows that merely vitiating a claim is not enough for the court to then sanction us. Well, where, I guess, where did you provide evidence in the context of the sanctions motion directed to why you thought you could succeed on ELE if you were wrong on literal infringement? So in the briefing, I believe it's A370, Your Honor, and I'm running into my rebuttal time, but I'd like to answer the question. In the briefing, it goes A370 over to 371. You're talking about the record? In the record, yes, in the record, where we discussed whether or not allowing the claim limitation would vitiate the claim one. And then in addition, we have an affidavit in the record showing the function way result arguments that we put forward, and I believe that's 378. Yes, the function way result arguments that we put forward, which were an affidavit from our inventor on 378, 379, and they begin on 375, A375. So that's the arguments that we presented to the district court. One, why we were met by the function way result test, and two, why claim vitiation would not apply. And even if those arguments were wrong and we accept on appeal that we lost on the merits, they weren't sanctionable. And with that, I'll yield the floor. Mr. Walters. Okay, please, before. Let me begin by addressing the claim construction issues, and they're particularly important here because, as Judge McMahon found, claim construction was the only basis on which the plaintiff appellate opposed the Rule 11 motion. They didn't oppose on grounds of literal infringement or on doctrine of equivalence. They didn't submit any declarations. Their so-called October 6th analysis, which they contend reflects their pre-suit analysis, doesn't address either literal infringement or doctrine of equivalence. And the claim construction here, they're very simple claim terms, a lot narrower than the diameter of the rod. The court applied the plain meaning in the court below, the district court. Source has never challenged that, has never proposed an alternative construction of those claim terms. So there's no— The focus of claim construction was the width, the measurement of the slot, correct? Yeah, that's correct. That's correct. The focus was the meaning of the term slot narrower than the diameter of the rod. That's correct. Just to break it down into— Two of the terms are just mathematical, narrow in diameter, slot and rod are simple terms that there's no dispute about their construction. There was no— In our view, there was no real attempt to interpret the meaning of the claim terms in the normal sense of the word interpret. There's no contention by source, no real contention that any of those terms are ambiguous or that that phrase is ambiguous. There was no argument in the court below that they acted as— that the applicant acted as its own lexicographer. There was no argument that there was a mistake or a request for a certificate of correction. There certainly was no argument that there was a kind of mistake that a court could just correct on its own. Instead, they just inserted new— as it is, and that was the only argument that they relied on to oppose the Rule 11 motion. The specification, of course, is always relevant to interpretation, but as was reflected in the comments earlier, the term slot rod container, they're used throughout the claims as very distinct terms with distinct meanings, and they're used throughout the specification as distinct terms. So there's no issue with the specification teaching a different construction. I did want to address one argument that was not raised in the comments earlier, but was raised in the briefs for the first time. There's a reference to Figures 2 and 3, and the text that relates to Figure 3 specifically says, this is A72, column 7, lines 33 to 36, sealer 50 cannot be removed from the fold unless it slides in an opposite direction to the direction that it has been put on since slot 54 is narrower than the diameter of rod 60. So clearly there, there's a comparison between the slot and the rod as there is in the claims. There's an argument that if you look at the figures a certain way, it looks like the rod may be smaller than the slot, but it's very clear from Figure 2, item 54 is the rod, item 60 is the slot. There's a comparison of the slot and the rod, not a comparison that involves the, they're not using slot is narrower than the rod to somehow refer to the container as well. I'd like to just briefly address literal infringement. The argument, and there's a lot of back and forth in the briefing, and I don't care to get into it, but even if you accept sources construction, the problem, which is just we believe dead wrong, even if you accepted it, what Judge McMahon was saying is the only portion of the container that is folded over is this little portion here, and it's clear, it's a little bit small, so maybe you can't see it when I'm holding it, but it's clear from the declarations, and it is clear when you look at it that even that is smaller, and there's declarations to support this. It's not disputed that that's smaller. They're referring to these catches, which are way over here. They're not folded over the container. So even under this frivolous claim construction, we still don't infringe. I did want to talk about doctrine of equivalence. There's a lot in the briefing about that. The place I'd start with that is it's not, it wasn't a basis for their opposition to the Rule 11 motion. There's nothing in the declarations about any pre-suit investigation of doctrine of equivalence, no discussion of doctrine of equivalent, excuse me, of prosecution history estoppel or claim vitiation. Well, there's some. There's a passing, you're right, there's a passing phrase in the declaration that's copied in the brief that the attorney bought the product, construed the claims, and concluded that Hyder Pak infringed either literally or under the doctrine of equivalence. So there's no definitive statement, even a conclusory statement, that in fact a pre-suit investigation was done in the record that was before the court at the time of the decision. With respect to the merits of the doctrine of equivalence arguments, let me just address a couple of points about vitiation. This is not your normal vitiation kind of argument. The Voda case, for example. Didn't you twice say here, as you stood here, that they did not oppose below on DOE or literal infringement that their response to the rule of motion and their arguments to the court were exclusively on claim construction? That's correct. What about page 893 of the appendix? I just want to make sure I, perhaps this is, you'll tell me this was not part of the briefing below or something. I don't know. Roman numeral 2. Now, keep in mind you've excerpted out portions of what looked like briefs that were filed below, so I don't know what was on page 892, but it's not here. But page 893, number 2, is all on claim vitiation. Yeah, let me just check this. And if you follow through, 894 and 895, April 18, 2012, submitted, it seems to me this was a brief that would have been filed at the district court. Yeah, okay. Thank you for pointing that out. To clarify, they sort of filed a motion for reconsideration after the Rule 11 issue, the Rule 11 order was issued in which they raised some additional arguments. So that, as with any, as I understand it, the decision on the motion for reconsideration has not been challenged. They certainly haven't gone through the standards to say. Okay, here's my point. We're here on a Rule 11 sanctions award where you got a giant pile of money directly from their pockets because they did something so frivolous and wrong a lawyer shouldn't have done it. And you stood in front of me twice and said that they never opposed a Rule 11 award below on any basis other than claim construction. You said it twice. I mean, you said it the first time I thought it was wrong, but I said nothing, and that's why I've been pinging back and forth with my law clerks. You are wrong. You just represented to the court twice that they didn't raise an argument below that they, in fact, did raise. And that bothers me, especially in light of why we're here today. Your Honor, I certainly apologize. I did not in any way mean to imply that that was never stated. What I meant to say is at the time in the relevant portion of the record before the court below for the Rule 11 decision, they did not make any submission on doctrine of equivalence whatsoever. There's a separate standard for a motion for reconsideration for material that's submitted after an order, and they have not challenged it. In their brief, my understanding is they have not challenged that the court didn't properly follow the standards for deciding a motion for reconsideration. So I apologize if the court was misled and if I misstated things in any respect. When they opposed the Rule 11 motion, they only limited themselves to claim construction. That's correct. And I don't remember exactly what you said, but to the extent that you may have said they never raised this below, that is not correct. I'm glad to check the record. I'm pretty sure I did not say that because they did raise it in the context of opposing the motion for summary judgment. I understand your response. Thank you. No, no, not just in response to summary judgment. And in the motion for reconsideration. Okay, if that's part of the brief, I can't tell what it's part of because you only gave me three pages of the whole brief and not the first page, which says what it's for. That was the portion that you pointed to was for a motion for reconsideration. They did raise it in the context of the Rule 11 proceedings, just not until a motion for reconsideration. Right, and we believe it's not. There it is. Thank you. Is that when they raised the first time through the argument regarding the catches? Well, we raised in our Rule 11 motion originally the argument that the catches cannot be the rod or its equivalent for many of the reasons that were mentioned earlier there. On the outside of the container, there are six of them instead of one of them, so there's not a first end and a second end. It doesn't span the lateral opening. That was not responded to in the context of Rule 11. That wasn't responded to in the context of summary judgment. They did make the argument in their summary judgment motion that if you add the catches together with the container, together with what they call the rod, which is this lip bulge that goes through here, that if you add all three of those together, that can be the equivalent. Why isn't that a reasonable argument? I mean, counsel is presenting alternative arguments. They're arguing on behalf of their clients. They're making a judicious presentation of a case, and oftentimes the strategy is let's pursue different types of arguments. Why is that not reasonable? The reason that isn't reasonable, that particular argument isn't reasonable, is the Supreme Court has required an element-by-element analysis. They have not argued that – and one of the claim limitations we're talking about is slot is narrower than the diameter of the rod. They haven't pointed to any element that – here they acknowledge that the slot is wider than the diameter of the rod. They don't argue – it's not like the Voda case where they say, well, there's curved and straight, and we could have this academic debate about whether they're opposites or not. In that case, the court found that they actually were equivalents in the context of the patent. Here there's no argument about that. They're focusing instead on putting these different elements together. And the problem with that is that when you add the catches and the container to this lip bulge, which they're saying is a rod. We don't think that's a rod either. Then you're wiping out all these other elements of the claim. That's why you have the element-by-element analysis. All of a sudden, the container has to be wrapped around the rod. But if they're saying the equivalent of the rod is the catches plus the container plus this lip bulge, you can't wrap the container around the rod. They're not – and there aren't – there isn't one catch. There are six of them. And they have never addressed those arguments, including in their appellate briefs. We raised them in our Rule 11 – those are in the original Rule 11 brief. They've never been addressed. And that's the reason that this is not your normal – you know, vitiation has been – your Honor has written quite a lot on vitiation. There's a lot of case law on that in the last couple of years. But this is not your normal vitiation case where there's some dispute about whether this corresponding element is an equivalent. The issue here is – Can narrower and wider be the same thing? Can narrower and wider be the same thing? And they haven't argued that they are. And although I realize this is not the basis in the Rule 11 the district court relied upon, the whole narrower thing was added during prosecution to overcome a piece of prior art. This isn't sort of an errant limitation. That's correct. A key limitation on structure that was added to overcome the prior art. That's right. That's right. And we've argued in the briefing, and I won't belabor it because I have limited time, that the prosecution history estoppel is an alternative grounds for the court to affirm. But that's a hard thing. On a Rule 11, if I really – I don't know if I can actually even do that, to be honest with you. On a Rule 11, that I could – if I really was struggling with the vitiation argument, I don't know that I could make up my own other argument that the record supported for awarding sanctions. Because it is a discretionary decision at the district court level. Fair enough. And I feel very uncomfortable personally doing that. And so in that circumstance, we believe that there's adequate reason to affirm the court based on the other grounds that were referenced in the motion. But if the court disagrees, then the remand on some of these other issues is the appropriate – we agree that's the appropriate approach. I did want to just briefly – Can I ask a – Oh, yes, absolutely. Just a very dumb question. But in the Rule 11 situation, who gets the sanction? Do you get it? Does your client get it? The client gets it. The client gets it. And if I could just – it's not relevant, but just to address one point here. You mentioned it's a lot of money. The client is a nine-employee company. We originally brought the summary judgment motion as a single limitation to make it as narrow and inexpensive as possible. Source filed a cross-motion for summary judgment on eight limitations. And we had to respond to that, and we also cross-moved. But basically the cross-motion was a label. It wasn't any additional work. So the reason that this wasn't very inexpensive was because the plaintiff chose to make it that way. I didn't mean to suggest that you had overcharged. Oh, no. And I don't want to give anyone that impression. That's in the briefing, though, and so it's a point I wanted to address. Again, I don't think it's legally relevant, but it's – Why do you say that, actually? Why couldn't, as part of his discretion, the district court look to the disparity between the parties and the motivation potentially for the litigation and the harm it might have caused? I mean, I'm not positive that you're right. Well, fair enough. Can you expressly refer to it here? Yeah. In this case, on the appeal, I should say that they haven't challenged any of the magistrate judges. This is a separate issue. They haven't challenged any of the magistrate judges' findings that this would be adequate. Let's let Mr. Jenks have his rebuttal time. Thank you, Mr. Walter. If I may, Your Honor, just a few brief points. This case, the Rule 11 briefing and the summary judgment briefing were going on at the same time during this case. So when we referred in our Rule 11 opposition to literal infringement and doctrine of equivalence infringement, it may not have been fulsome, but I think at A744, you'll find us arguing it in the same way. And at A765 is the affidavit that we're incorporating when we argue it. It's brief, but keep in mind, this was parallel with the summary judgment motion where all these issues were being briefed. Your Honor said that during prosecution, this information was added to overclaim prior harm. I know. I was wrong. It's 112. You were going to say clarification, but it's 112. And there were two amendments at the same time, at the time they were facing the 112, one of which overcame the 112. And since the court's obviously already found it, I'll just refer to pages 300 and 320 for the before and after, and then 312 for the argument presented. Oh, sorry, I don't have that right. Oh, thank you. 326 for the argument presented. I completely understand your argument, but I don't think you need to spend much time on it because it isn't the basis the district court relied on, and so I think you probably would be better off addressing vitiation if you can. I guess you're kind of over your time, but go ahead real quick. Thank you, Your Honor. Again, on vitiation, I think the question is not whether we were wrong as a matter of law, and that's what the vitiation doctrine concludes. The question is whether we were so wrong as a matter of law that it was frivolous to argue that. Now, we argued a case to the district court that was VOTA that showed that there is no iron rule that opposites cannot be met. Our own argument, which conforms to the optimized construction, dealt with not wider equals narrower, but with the fact that when you discuss the comparison, you're including the rod and the wrap, and in some situations, that comparison is immaterial. In this situation, it was not. Okay. I think we have the argument. Thank you, both counsel. Thank you, Your Honor. The case is taken under submission.